IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JEANNIE O. OLIVER,

                                Plaintiff,                          OPINION AND ORDER

        v.
                                                                    12-cv-00400-wmc

CAROLYN COLVIN, Acting Commissioner of Social Security,

                                Defendant.

Pursuant to 42 U.S.C. § 405(g), plaintiff Jeannie O. Oliver appeals from a final administrative decision of the Commissioner of Social Security confirming an administrative law judge's ("ALJ") ruling that Oliver was not disabled within the meaning of the Social Security Act.[1]  This appeal followed.  For the reasons set forth below, the case will be remanded to the Commissioner for further hearing.


BACKGROUND[2]

I.  Procedural History

On July 14, 2005, Oliver filed her application for Title II disability insurance benefits ("DIB"), alleging disability since November 23, 2002. (AR 11).  Her application was denied on October 4, 2005, and again at the reconsideration level on May 26, 2006. (AR 64-66, 73-76).  Oliver filed a timely request for hearing. On November 19, 2008, a

---

[1] The court heard oral argument on February 6, 2014.
[2] The following facts are drawn from the administrative record, which can be found at dkt. #8.

hearing was initiated but then postponed so that a psychological evaluation and report could be obtained. (AR 529-36.)

As a result of an administrative remand, the ALJ actually rendered two decisions that are now subject to judicial review.  On February 3, 2009, a hearing was held in Madison, Wisconsin, before ALJ Arthur J. Schneider.  (AR 537-97.)  On March 16, 2009, ALJ Schneider rendered his decision finding Oliver to have the following RFC: "a full range of work at exertional levels but with the following nonexertional limitations: The claimant should not be exposed to conditions of extreme heat or humidity (*i.e.*, the 'heat and humidity limitation') and may be limited to overhead work" (the "First Decision").  (AR 57.)  The ALJ also concluded that Oliver could perform her past relevant work as a purchasing agent.  (AR 48-59.)  Based on these findings, the ALJ found Oliver was not disabled.  (*Id*.)

On April 17, 2009, Oliver filed a timely request for review of the ALJ's First Decision with the Appeals Council.  (AR 97-98.)  On December 9, 2009, the Appeals Council remanded Oliver's case for further proceedings.  (AR 60-63.)  In particular, the Appeals Council noted:  (1) a medical expert at the hearing had testified that Oliver had a mood disorder, which resulted in her having moderate limitations of concentration, persistence and pace; and (2) the ALJ failed to indicate why that opinion was rejected. (AR 61.)  The Appeals Council also noted that the ALJ had not addressed the State Agency consultant's opinion that Oliver's plantar fasciitis limited her to light work.  (*Id.)*

On September 15, 2010, another hearing was held before ALJ Schneider in Madison, Wisconsin.  (AR 598-636.)  On October 29, 2010, ALJ Schneider rendered a

"partially favorable" decision, finding Oliver to have the functional capacity for a range of light work, which meant she was disabled as of June 20, 2008, when she reached age 55, based on the Commissioner's Medical-Vocational guidelines.  (AR 20-28.)  The ALJ also found, however, that Oliver was not disabled before June 20, 2008, because she could perform other jobs in the economy -- namely, office clerk, mail clerk and assembler.  (AR 26-28.)   Specifically, the ALJ found Oliver retained the following RFC: "to perform simple, routine, repetitive light work which would not involve concentrated exposure to gases, fumes, odors, or dust in ill-ventilated environments (*i.e.,* the 'ventilation limitation'); she should avoid hazardous machinery and dangerous heights; she is able to understand, carry out and remember simple instructions, relate appropriately to supervisors, co-workers and the public, and is able to adjust to changes in the work setting" (the "Second Decision").  (AR 24-25.)   In the Second Decision, the ALJ also states that the "evidence in existence previously available was summarized at length in the prior decision ... Accordingly, that summarization [of the evidence in the First Decision] is incorporated by reference as if fully stated."  (AR 22.)[3]

---

[3] This incorporation statement is not a model for clarity, leaving as it does room for debate whether summarization of the evidence *and* findings of fact from the First Decision have been incorporated into the Second Decision.  Typically, "evidence" is defined as, "something (including testimony, documents and tangible objects) that *tends to prove* or disprove the existence of an alleged fact." *Black's Law Dictionary* 635 (9th ed. 2009) ('Black's'). A "finding of fact" is different to evidence in the strict sense. Specifically, a finding of fact is defined as, "a determination by a judge, jury, or administrative agency of a fact supported by the evidence in the record, usually presented at the trial or hearing." Black's, *supra* at 708.  Given that the ALJ's decision will be remanded on other issues, the ALJ should, at minimum, clarify what has been "incorporated" from earlier decisions or preferably, outline the essential findings in a single decision.

Oliver filed a timely request for review of the ALJ's decision (appealing the RFC finding, as well as the date of disability onset). On March 30, 2012, the Appeals Council denied Oliver's request for review, making the ALJ's decision the final determination of the Commissioner. (AR.8-10.) On June 5, 2012, Oliver filed a timely complaint for judicial review in this court pursuant to 42 U.S.C. §405(g).

## II. Oliver's Testimony

Oliver was born on June 20, 1953. She graduated from high school and completed a second year of college in 1973. (AR 164.) From June 1990 through November 2002, she worked as a purchaser of computer components for the University of Wisconsin. (AR 159.)

On November 1, 2001, Oliver was diagnosed with breast cancer (infiltrating duct carcinoma) and underwent a lumpectomy with axillary lymph node dissection. (AR 225, 285.) She subsequently underwent wide-volume breast brachytherapy, which was completed in April 2002; she was then treated with on-going Tamoxifen for five years. (AR 240.) One of the unfortunate side-effects of this treatment was triggering of early menopause and Oliver began suffering from chronic hot-flashes, sleep deprivation, and fatigue, all of which she maintains rendered her unable to work beginning November 2002. She also suffers from plantar fasciitis and a mood disorder.

Accordingly, Oliver alleges her disability began in November 2002, when she was still 49 years old. On June 20, 2003, she turned age 50, and was deemed to be "closely approaching advanced age" pursuant to 20 C.F.R. §404.1563(d).

4

At the 2010 hearing, Oliver testified that she did no work after November 2002 and any payments she received after that time were for unused vacation and sick leave. (AR 606.)  Oliver also testified that her hot flashes began when she was undergoing chemotherapy and have persisted through this day.  (AR 607.)  The flashes are sufficiently severe that she takes off as many clothes as she can, turns on fans, drinks something cold and tries to put something cold behind her neck.  (*Id.*)  These hot flashes last from 20 minutes up to an hour.  (AR 608.)  When they first started in February 2002, the hot flashes were a constant for five years.  While no longer constant, the hot flashes still occur during the night and also through the day.  (*Id.*)

## III. Relevant Medical Evidence

### A.  Plantar Fasciitis

On July 25, 2003, Jennifer Morris, a physical therapist, reported that Oliver was tender over the plantar aspect of her heel.  Morris stressed how important it was for Oliver to be off her feet.  (AR 278.)  Morris also noted that Oliver was hesitant about night splints because she "already does not get much sleep due to menopausal symptoms, chemotherapy induced." (AR.280-282.)

On October 3, 2005, Dr. Pat Chan, a state agency physician, considered Oliver's plantar fasciitis.  (AR 310.)  He opined that this condition (as well as her other impairments) would not prevent Oliver from lifting/carrying 20 pounds occasionally and 10 pounds frequently, as well as standing/walking for about six hours out of an eight-hour day and sitting for about six hours out of an eight-hour day.  (AR 311.)  Dr. Chan also

believed that Oliver would need to avoid moderate exposure to hazards, such as machinery and heights.  (AR 314.)

On November 18, 2008, Dr. Thomas T. Midthun, examined Oliver.  (R.476-78.) On examination Dr. Midthun noted loose ligaments in Oliver's knees and reported that the loose ligaments might be the reason for her instability.  (AR 477.)  He also noted that her tandem gait could be done but was somewhat unsteady, as well as mild to moderate tenderness of the plantar fascia at her heels.  (AR 477-78.)

**B. Hot Flashes**

On June 24, 2003, Dr. Edward J. Prendergast, an oncologist, noted Oliver's report of increased hot flashes.  (AR 285.)  In a treatment note dated July 19, 2005, Dr. Predergast explained:

> We started the patient on tamoxifen in approximately June 2002. The patient is here at the beginning of the 4th year of treatment. She had a lot of problems with hot flashes from tamoxifen and tried using Effexor, but this did not help very much. We also tried treating her with Aromasin and with Anastrozole. She did not tolerate either of those medications and eventually went back on the tamoxifen 20 mg daily. Ms. Oliver continues to have severe hot flashes around 20 per day. This really has not changed for her since I last saw her in 2002.

(AR 247.)

On May 9, 2006, Dr. Norman Callear, a state agency physician, considered Oliver's hot flashes. Dr. Callear prepared a physical residual functional capacity assessment solely with respect to this condition.  In his report, Callear found that neither

Oliver's plantar fasciitis nor her hot flashes warranted any exertional limitations, but did report a limitation from concentrated exposure to extreme heat and humidity.  (AR 437.)

## IV. Administrative Law Judge's Decision

The ALJ found that Oliver had not engaged in substantial gainful activity ("SGA") since November 23, 2002.[4]  (AR 22.)  He also found that Oliver had the following severe impairments: a history of malignant neoplasm in remission, persistent hot flashes, plantar fasciitis and a mood disorder.  (AR 22.)  Still, the ALJ found Oliver to have the following residual functional capacity ("RFC"): "simple, routine, repetitive light work which would not involve concentrated exposure to gases, fumes, odors, or dust in ill-ventilated environments; she should avoid hazardous machinery and dangerous heights; she is able to understand, carry out and remember simple instructions, relate appropriately to supervisors, co-workers and the public, and is able to adjust to changes in the work setting."  (AR 24-25.)  The ALJ also found that Oliver was unable to perform her past relevant work, but that she was not disabled prior to turning 55 on  June 20, 2008, in light of her ability to perform other jobs, namely office clerk, mail clerk and assembly positions.  (AR 27-28.)  In his decision, the ALJ also incorporated by reference his prior decision of March 2009 (AR 22, 26), presumably to the extent not vacated by the Appeals Council in December 2009.  (AR 60-61.)

---

[4] The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.  *See Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

## OPINION

The standard by which a federal court reviews a final decision by the commissioner is well settled:  the commissioner's findings of fact are "conclusive" if supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge.  *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).  Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993).

Even so, a district court may not simply "rubber-stamp" the Commissioner's decision without a critical review of the evidence.  *See Ehrhart v. Secretary of Health and Human Servs.,* 969 F.2d 534, 538 (7th Cir.1992).  A decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).  The ALJ must also explain her "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Id. See also Herron v. Shalala*, 19 F.3d 329, 333–34 (7th Cir.1994). When the administrative law judge denies benefits, she must build a logical and accurate bridge from the evidence to her conclusion.  *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

Oliver challenges the ALJ's decision on three principal grounds:  (1) a failure to account for the limitations regarding Oliver's persistent hot flashes; (2) a failure to account for the limitations resulting from Oliver's plantar fasciitis; and (3) a lack of substantial evidence in the ALJ's step five analysis.  Because the court finds merit in each of these criticisms, the court will remand the case to address all three.

## I.  Hot Flashes

An RFC assessment is the most a claimant can do despite his or her limitations. Here, the ALJ must assess Oliver's RFC "based on all the relevant evidence in [the claimant's] case record."  20 C.F.R. § 404.1545(a)(1).  Examples of the types of evidence required to be considered in making an RFC assessment are the claimant's medical history, medical signs and laboratory findings, and medical source statements.  SSR 96–8p.  Based on all of the relevant evidence in the record, an ALJ must then make specific findings:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence . . . . [T]he adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also *explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved*.

SSR 96–8p (emphasis added).

Oliver contends that the ALJ fails to provide a sufficient rationale regarding the impact of Oliver's hot flashes in terms of her functional capacity.  (Pl.'s Opening Br. (dkt. #13) 13.)  Because of this, Oliver asserts that the ALJ's "rationale vis-a-vis her hot flashes is deficient." (*Id.*)  Her argument is predicated on the fact that there were two decisions in the record.

Neither the First nor the Second Decision is a model of clarity.  Counsel for the Commissioner conceded as much during oral argument, but argued the court should broadly "read between the lines" to make sense of the two decisions.  Given the standards set by the Seventh Circuit and the apparent inconsistencies and ambiguities in the two decisions, it is an uphill battle to accept the Commissioner's position.

For instance, the ALJ fails to provide any *explanation* for connecting substantial evidence in the record of Oliver's hot flashes impairment to the ventilation limitation. Indeed, there is *nothing* in the record to support the Commissioner's assertion on appeal that the ALJ's ventilation limitation was intended to ease the symptoms of Oliver's hot flashes, much less *medical* evidence that it would have any meaningful impact.  This deficiency is in itself sufficient to warrant reversal of the ALJ's decision.  *See* SSR 96–8p at *7 ("RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts").

Lack of adequate explanation also prevents the court from discerning whether the limitation should have been incorporated into questions to the vocational expert.  An ALJ must explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review.  *See Herron,* 19 F.3d at 333-34.  Because the ALJ has failed

10

in this respect, the court has little choice but to remand for further consideration. *Ehrhart*, 969 F.2d at 538 (explaining that a district court may not simply "rubber-stamp" the Commissioner's decision without a critical review of the evidence).

The ALJ's RFC determination also fails to explain apparent inconsistencies in his ventilation and heat/humidity limitations, particularly in circumstances where the ALJ has an obligation to do so. *See* SSR 96–8p (stating that the ALJ must "explain how material inconsistencies in the evidence in the case record were considered and resolved"). In particular, nothing in the ALJ's decision serves to explain why one limitation replaced the other, although the Commissioner attempts to do so.

First, the Commissioner points to "the opinion of Dr. Callear" as providing "substantial evidence supporting the ALJ's decision" and his RFC limitations. (Def.'s Opp'n Br. (dkt #17) 6.) Upon review, there is little support in Dr. Callear's opinion to account for the altered RFC limitation. While Dr. Callear's opinion provides some evidence for a heat and humidity limitation, it says nothing about a ventilation limitation. (AR 437.) In fact, Dr. Callear expressly notes that Oliver had no limitations with respect to concentrated gases, fumes, odors, or dusty environments indicative of a ventilation limitation. (*Id*.) Consequently, the court is left to surmise that the ALJ either: (1) relied on other evidence in the record to support the ventilation limitation; or (2) the heat and humidity limitation was replaced by the ventilation limitation.[5] But

---

[5] During the hearing, the Commissioner's counsel indicated that reference in the RFC to "heat and humidity limitation in the [First Decision] *falls away*" and is accounted for by the "light work" limitation that was presented in the Second Decision. As noted above, it is difficult to discern from a thorough review of the ALJ's decision whether the heat and humidity limitation was meant to remain

without proper discussion of the evidence, it begs the question whether the ALJ gave any meaningful review to the issue.

Second, the Commissioner attempts to deflect attention from this apparent inconsistency by arguing that impairments resulting from hot flashes are accounted for by the light work limitation in the RFC determination.   Specifically, the Commissioner argues that the "ALJ reasonably accounted for Oliver's plantar fasciitis and hot flashes *by restricting her to a limited range of light work."*  (Def.'s Opp'n Br. (dkt #17) 4.)   In support, the Commissioner points to evidence from Dr. Chan, but Dr. Chan limited Oliver to a range of light work based on evidence relating to plantar fasciitis -- not hot flashes.   More to the point, a hot flash is an exertional limitation, and heat and humidity is a non-exertional limitation.   (AR 462-65).   Because these limitations are not interchangeable, the Commissioner's argument to the contrary creates more questions than answers. Indeed, it appears to be a post-hoc rationalization that only reinforces the need for remand.  *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (stating that a decision should not necessarily be upheld on the basis of post hoc arguments made by the government, but never offered by the ALJ.)

Given that remand is warranted in this case and to guard against any future ambiguity, the court recommends that the ALJ provide a solitary RFC determination without need for cross-referencing to previous decisions.   That way, any reviewing court can readily understand the ALJ's actual findings and also determine whether the RFC is

---

in the Second Decision (or not).  This only reinforces the need for remand in this case to dissolve these very ambiguities through better explanation in the ALJ's reasoning.

congruent with the questions posed to the vocational expert.  *See Briscoe*, 425 F.3d at 351; *see also* SSR 96–8p at *7.

## II. Plantar Fasciitis & the ALJ's RFC Determination

The crux of Oliver's argument as to her plantar fasciitis is that it limits her ability to stand.  Light work requires the individual to be on their feet for up to six hours of an eight-hour work day, every day.[6]  *DeFrancesco v. Bowen*, 867 F.2d 1040, 1044 (7th Cir. 1989).  In the Second Decision, the ALJ found that Dr. Chan's evidence supported a finding that Oliver could stand on her feet for long enough to meet the light work requirement.  In rebuttal, Oliver first points to medical evidence in the record of her plantar fasciitis impairment that, she contends, was ignored by the ALJ.  Oliver also contends that the ALJ improperly discounted the severity of her pain based on her daily activities.

With respect to the medical evidence, Oliver argues that the ALJ committed legal error in completely ignoring Dr. Mathun's report.[7]  (Pl.'s Opening Br. (dkt. #13) 11.)  In response, the Commissioner points to the ALJ's discussion of Dr. Midthun's opinion in the medical summary in his First Decision, to which the ALJ afforded "little weight."  (AR 54-55, 58.)  As such, the court rejects Oliver's attack on the ALJ's decision for ignoring medical evidence.

---

[6] If Oliver were unable to sustain these standing demands as a result of her plantar fasciitis, then an RFC for sedentary work under the Commissioner's medical-vocational guidelines directs a finding of "disabled" as of Oliver's 50th birthday, June 20, 2003.

[7] In denying disability benefits, an administrative law judge may not just "ignore an entire line of evidence that is contrary to her findings, rather she must articulate at some minimal level her analysis of the evidence to permit an informed review." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).

Oliver's other argument, however, has traction.  Specifically, the ALJ's reasoning fails to distinguish between activities done at a time and pace under Oliver's control, and activities done at a time and pace under an employer's control.  *See* 20 C.F.R. §404.1573(c).  The Commissioner contends that the ALJ's RFC finding was reasonable given that Oliver's credibility was called into question regarding her purported daily activities, including household renovations.   In response, Oliver argues that the Commissioner's reliance on daily activities is not placed in its proper context for the purposes of discounting her credibility, citing two Seventh Circuit cases in support -- *Carradine v. Barnhart*, 360 F.3d 751 (7th Cir. 2004), and *Clifford v. Apfel*, 227 F.3d 863 (7th Cir. 2000).

In *Carradine*, the ALJ found the plaintiff's testimony was inconsistent with the activities that she acknowledged engaging in, such as performing household chores and taking walks as long as two miles.  The Seventh Circuit was critical of this approach: "the administrative law judge could not get beyond the discrepancy between Carradine's purely physical ailments, which although severe were not a plausible cause of disabling pain, and the pain to which Carradine testified." *Carradine* 360 F.3d at 753.   The Seventh Circuit questioned "if the [claimant] was testifying truthfully and against her interest about her daily activities, why did the administrative law judge think she was lying about her pain?" *Id.*   The Seventh Circuit held that the ALJ erred in so far that "he failed to consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days of the week." *Id.*

In *Clifford*, the Seventh Circuit similarly opined that the ALJ dispensed with the claimant's allegations of pain in a conclusory manner. 227 F.3d at 872. There, the Seventh Circuit reasoned that the ALJ did not explain why the objective medical evidence did not support Clifford's complaints of disabling pain and that the "ALJ merely lists Clifford's daily activities as substantial evidence that she does not suffer disabling pain." *Id.; see also Jelinek v. Astrue,* 662 F.3d 805, 812 (7th Cir. 2011) ("An ALJ may consider a claimant's daily activities when assessing credibility, but ALJs must explain perceived inconsistencies between a claimant's activities and the medical evidence"); *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (stating that "the ALJ mentions Stewart's ability to cook, clean, do laundry, and vacuum at her home, but those activities do not necessarily establish that a person is capable of engaging in substantial physical activity").

The ALJ's credibility analysis is similarly deficient here. *First,* the ALJ's analysis is conclusory with respect to his discussion of medical evidence that purportedly discounts Oliver's allegation of severe pain resulting from plantar fasciitis.[8] The Commissioner points to page 26 in the record as providing support for the ALJ's findings, but these boilerplate passages fail to provide discussion of *why* the medical evidence undermines Oliver's credibility. Instead, the court is confronted with cursory passages in the ALJ's decision, stating that "the evidence fails to show . . . the extreme severity of

---

[8] An ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p, at *2. *See Zurawski*, 245 F.3d at 887; *Diaz v. Chater*, 55 F.3d 300, 307–08 (7th Cir. 1995) (finding that the ALJ must articulate, at some minimum level, his analysis of the evidence).

pain and other symptoms that claimant alleges." (AR.26.)   Cases such as *Clifford* and *Carradine* demand more.

Once Oliver established impairments that could creditably produce severe pain or other symptoms at step two (*i.e.*, a severe impairment), she was not required to fully substantiate her allegations with objective medical evidence.  *See, e.g., Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While this does not mean that an ALJ is forbidden from comparing the claimant's allegations to the medical evidence, *see, e.g., Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009), he may not reflexively reject a claimant's statements on this basis.  Given the limited discussion by the ALJ on page 26, the court finds that the ALJ's cursory reference to the medical evidence similarly deficient.

*Second*, an argument that the necessary findings were incorporated from the ALJ's First Decision does not save his credibility analysis from remand.  While there is discussion of the medical evidence regarding Oliver's condition in the First Decision, the ALJ did not find enough credible evidence to warrant the plantar fasciitis impairment to be severe for the purpose of step two evaluation.  Indeed, this was the reason why the Appeals Council referred Oliver's case back to the ALJ for reconsideration. (R.23.)   Thus, in the First Decision, the ALJ did not even get to findings on the severity of Oliver's pain for the purposes of an RFC determination on plantar fasciitis.  As such, any argument made by the Commissioner that the Second Decision incorporates credibility findings from the First Decision lack merit.  *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)

(stating a decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review"); *see also Herron*, 19 F.3d at 333–34.

Third, during oral argument, counsel for the Commissioner argued that the ALJ *did* discuss Oliver's household activities, thus satisfying what was stated in *Carradine*. But what *Carradine* requires is consideration of the *difference* between an ability to participate in physical activities done at the claimant's time and pace, and an ability to complete a regular work week at the employer's pace. *Carradine* 360 F.3d at 753. The ALJ fails to do this in either of his decisions.[9] While the ALJ was quick to discount Oliver's credibility by reference to her home renovation activities, there is no meaningful acknowledgement that Oliver's activities were achieved at *her* pace and persistence, nor is there even discussion of how this would comport with regular work.

Indeed, Oliver explained at the hearing that she took breaks and would "lie down" whenever she needed to rest, but did what she could because, financially, she had no other choice. (AR 613-5.) No mention is made of the frequency of these breaks in the ALJ's decision, information the ALJ must consider in determining whether such breaks hinder her ability to participate in a regular work week. *Carradine* 360 F.3d at

---

[9] While SSR 96–7 directs the ALJ to consider a claimant's daily activities as part of the analysis, she must do so with care. *See Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office or factory or other place of paid work."). Further, the ALJ must explain why particular activities undercut the claimant's credibility; it is not enough to simply list various chores, declare them "significant," and then find the claimant incredible. *See, e.g., Jelinek v. Astrue,* 662 F.3d 805, 812 (7th Cir. 2011) ("An ALJ may consider a claimant's daily activities when assessing credibility, but ALJs must explain perceived inconsistencies between a claimant's activities and the medical evidence.")

17

753.   For example, if these breaks were not credited at all, then the ALJ should have stated as much given their importance to the *Carradine* analysis.

In remanding, the court is not deciding that Oliver is in fact entitled to benefits because of her plantar fasciitis in combination with other limitations or standing alone. Perhaps Oliver is exaggerating her pain; perhaps not.   At the same time, an ALJ decision cannot be upheld when the reasoning is inconsistent with that required by the Seventh Circuit -- even if those flaws might be dissipated by a "fuller and more exact engagement with the facts." *Carradine* 360 F.3d at 753; *Steele* 290 F.3d at 941.   As such, the ALJ decision must be remanded to the Social Security Administration for further proceedings regarding her plantar fasciitis.[10]


## III. The ALJ's Step Five Finding

In addition to the deficiencies addressed above, Oliver argues that the Commissioner failed to meet the burden imposed at step five of the evaluation process. 20 C.F.R. §§ 404.1520, 416.920.   Under step five, the ALJ was required to come forward with substantial evidence to show that Oliver was able to perform other work existing in significant numbers in the national economy. *Id., see Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

---

[10] On remand, the ALJ should expressly note Oliver's daily activities (and breaks) and cite credible medical evidence that cuts against her credibility (if any).   A clear credibility finding must be made with respect to those activities.   Once these steps are taken into account, the ALJ can then assess the difference between Oliver's ability to participate in physical activities done at her pace and the ability to work in a regular work week.   *Carradine* 360 F.3d at 753.

Here, the hypothetical questions to the vocational expert ("VE") were based upon an RFC limiting an individual to *light* work. (R.630-31). Notwithstanding this, in responding to the hypothetical questions, the VE indicated that the available office clerk, mail clerk and assembler jobs fell within light *and* sedentary exertional levels. This distinction is significant because if Oliver was only capable of sedentary work, the Commissioner's medical-vocational guidelines would direct a finding of disabled as of Plaintiff's 50th birthday, June 20, 2003. *See* 20 C.F.R. Pt. 404., Subpt. P, App 2. Because of this, the VE's evidence could *not* depend on Oliver's ability to undertake sedentary work. The number of jobs, therefore, went beyond the limits imposed by the ALJ's RFC determination.

Based on the VE's testimony, Oliver argues there is no way of knowing how many of the relevant jobs are actually performed at the light versus sedentary exertional levels. The court agrees. Reliance on such evidence by the ALJ, contrary to his own RFC determination and the Commissioner's guidelines can hardly be considered insubstantial. Remand is, therefore, required on this basis as well.

ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security, denying plaintiff Jeannie Oliver application for disability insurance benefits is REVERSED AND REMANDED under sentence four of

42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 11th day of March, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge